## GREYHOUND LINES, Inc., v. NOLLER.

Circuit Court of Appeals, Seventh Circuit.
December 5, 1929.

Rehearing Denied January 18, 1930.

No. 4206.

W. J. McDonald, of East St. Louis, Ill., for appellant.

James G. Burnside, of Vandalia, Ill., for appellee.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

PAGE, Circuit Judge. March 9, 1928, about 7:15 p. m., an Oakland car, headed east, with front but no rear lights burning, was parked on the south side of an east and west country highway, partially off of an 18-foot concrete pavement. Appellee was driving west, on the north side of the road, in a Studebaker car, with its lights on. Appellant's bus, with a capacity of 29 people, and carrying 10 passengers, in charge of two drivers, one at the wheel and one in the middle of the long rear seat, was going east on the south side of the pavement, with all lights on.

A Chrysler car, following the bus, turned to the left, passed the bus, cut in ahead of it, and stopped suddenly. The bus turned to the left, when, as appellee testified, the front of the bus was only 10 or 12 feet from his car, and the left front fender of the bus struck the Studebaker car, on the south side, near the rear end.

The judgment is for $6,750 for personal injuries to appellee and damages to his car.

In our view of this case, it is only necessary to consider one question—the negligence of appellant.

Appellant admits that the collision occurred while the bus was on the wrong side of the road, but urges that it was confronted by an emergency that required an instantaneous choice and immediate action.

Appellant's evidence shows that the bus was going not over 25 or 30 miles per hour; that the Chrysler, after passing the bus, turned back to the south side of the road, so close to the bus that it just missed the front of it, and ran only 40 or 50 feet before it stopped suddenly, and without any signal; that the bus was about its length behind the Chrysler when the latter stopped; that, because of a concrete abutment and a ditch, a turn to the right could not have been safely made; that the bus was so close to the Chrysler that it could not be stopped without colliding with the Chrysler; that, although the driver saw appellant's car coming, he thought there was a chance to get through without a collision.

Appellee testified that, when he first saw the Oakland, the Chrysler, and the bus, the Oakland was three-quarters of a mile west of him, and the Chrysler and the bus were about half a mile west of the Oakland; that he was going not over 20 miles per hour, and that the Chrysler and the bus were racing, side by side, at a speed of 55 or 60 miles per hour; in other words, that the bus was going at

practically three times his speed. The improbability of appellee being able to estimate fairly the speed of the bus, which was a mile and a quarter away and coming toward him, down a straight road, after dark, is increased by the fact that appellee said he never knew at any time whether the parked Oakland, which was half a mile closer to him, was moving or not. Appellee further testified that the bus and the Chrysler were about 100 yards west of the Oakland when he passed it; that is, while appellee was going a little more than three-quarters of a mile, the bus had traveled less than half a mile. So that, by that testimony, appellee showed that the bus was going only two-thirds as fast as he was. Again, appellee says that, when he first saw the Chrysler, after it turned back on the right side of the road, he was 60 feet east, and the Chrysler 200 yards west, of the Oakland; that the Chrysler stopped about 40 feet behind the Oakland, and he was then straight across the road from the Chrysler; that is, while he had moved 33 yards, the Chrysler had moved 187 yards, or nearly six times his speed. Again, appellee said, when the Chrysler stopped, and he was just opposite it, the bus was 40 or 50 feet behind the Chrysler; that, when he had gone 30 or 35 feet further west, the bus turned out in front of him, when it was 10 or 12 feet ahead of his car. If this testimony is true, the bus had not moved at all after the Chrysler stopped, but appellee had traveled 30 or 35 feet. Such testimony is worthless as evidence to fix the speed of the cars, or their location, and their relative positions preceding and at the time of the accident. Appellee also testified that the driver told him that he (the driver) was a new man, on his first trip, and did not know how to use the air brakes. The driver denied that testimony and said that he had been driving an automobile for eleven years, a bus three or four years, and had been driving for appellant several months. A passenger testified that she knew both of the drivers from having ridden with them. The only brakes on the bus were the air brakes. There is uncontradicted evidence that that driver had stopped the car at the Shattuc railroad crossing shortly before the accident. We are of opinion that the statement of appellee as to what the driver told him can have no weight in considering the question of negligence.

Where one who is not otherwise at fault is confronted by an emergency, such as here shown, he is not guilty of negligence, even though a deliberate judgment might have shown a better and a safer course. Davis v. Chicago, R. I. & P. Ry. Co. (C. C. A.) 159 F. 10, 11, 16 L. R. A. (N. S.) 424. It is not denied that the physical conditions show that there was less probability of an accident in the course taken by the driver in the emergency.

It is urged that the driver of the bus should have seen that the Oakland car was parked and should have stopped. In view of appellee's testimony that, with an unobstructed view, he did not know the Oakland car was parked, and in view of the fact that there was no light on the rear of the Oakland, and also that the Chrysler was between the bus and the Oakland, that suggestion does not merit consideration.

We are of opinion that there was no evidence of appellant's negligence that justified submission of the case to the jury. Pleasants v. Fant, 22 Wall. 116, 22 L. Ed. 780; International Text-Book Co. v. Heartt (4th C. C. A.) 136 F. 129, 133.

The judgment is reversed.