**Bruce L. JONES, Plaintiff–Appellee,**

v.

**Jacob L. CRUZAN, Defendant–Appellant.**

**No. 00CA1770.**

Colorado Court of Appeals,
Div. I.

Aug. 30, 2001.

Lloyd C. Kordick & Associates, Lloyd C. Kordick, Colorado Springs, CO, for Plaintiff–Appellee.

Jones & Waters, L.L.C., Robert K. Jones, Michael R. Waters, Colorado Springs, CO, for Defendant–Appellant.

Opinion by Judge DAVIDSON.

In this personal injury action, defendant, Jacob L. Cruzan, appeals from the judgment in favor of plaintiff, Bruce L. Jones. We affirm.

Plaintiff and defendant were involved in an automobile accident. Plaintiff filed suit ten months later, seeking compensatory damages. After defendant's deposition, plaintiff was allowed to amend the complaint to include a claim for punitive or exemplary damages.

The evidence at trial showed that plaintiff saw defendant's vehicle entering a busy intersection from a side street, tried to brake, and skidded into the rear left corner of defendant's vehicle. Defendant had run the stop sign at the intersection and, after the accident, continued through the intersection and left the scene, driving approximately seventy to eighty miles per hour. A witness tried to pursue defendant, but defendant

eluded her and returned via a back route to his house.

Before the case was submitted to the jury, by stipulation, plaintiff withdrew his request for punitive damages, and defendant admitted liability. The jury was instructed accordingly and, after deliberation, awarded damages in the amount of $100,000 to plaintiff.

## I.

Defendant first contends that, because evidence of defendant's post-accident conduct was not admissible, the trial court erred by allowing plaintiff to amend his complaint to request punitive damages. Moreover, he asserts that, despite the later withdrawal of the issue of punitive damages from the jury's consideration, the error was not harmless because admission of such post-event evidence "fanned the flames of passion and invited a distorted verdict on damages." We disagree that the evidence was inadmissible.

Punitive damages are available pursuant to statute if the injury complained of is attended by circumstances of, *inter alia*, willful and wanton conduct, which is "conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff." Section 13–21–102(1)(b), C.R.S.2000; *Corbetta v. Albertson's, Inc.*, 975 P.2d 718 (Colo.1999).

■ It is the quality of the tortious act, not the character of the wrongdoer, that justifies an award of exemplary damages. Thus, ordinarily, the acts of a wrongdoer occurring after the event creating liability are not material to the jury's assessment of punitive damages. *See Bennett v. Greeley Gas Co.*, 969 P.2d 754 (Colo.App.1998)(evidence of defendant's failure to comply with a 1982 regulation in 1987 was not material to the event creating liability in 1976).

■ Here, there was evidence at trial that defendant, while fantasizing that he was flying an aircraft to Paris, drove on the wrong side of the street, over the speed limit, through a stop sign, and into a busy intersection, where his car was hit by plaintiff's car. Defendant did not stop, but continued through the intersection, eluded a pursuing witness at speeds up to eighty miles per hour, and returned to his house via a back route.

Defendant argues that that the portion of the evidence concerning his post-accident behavior—namely, fleeing from the scene—was inadmissible under *Bennett v. Greeley Gas Co., supra,* because it was unrelated to plaintiff's injuries or to the quality of the tortious act.

However, we agree with plaintiff that defendant's entire course of conduct, including the portion that occurred after the accident, tended to show that defendant had been operating his vehicle heedlessly, recklessly, and without regard to the consequences or the safety of others. Thus, the trial court correctly determined that it was material to the issue of punitive damages. *See Forquer v. Pinal County*, 22 Ariz.App. 266, 526 P.2d 1064 (1974)(after-occurring conduct that has a reasonable relationship to the tortfeasor's state of mind at the time of the event itself is admissible on the issue of punitive damages); *Battle v. Kilcrease*, 54 Ga.App. 808, 189 S.E. 573 (1936)(conduct of hit-and-run driver can show an entire want of care and conscious indifference to consequences); *see generally* Annotation, 156 A.L.R. 1115 (1945)(conduct occurring shortly after an automobile accident may be sufficiently relevant to the tortfeasor's state of mind to warrant imposition of punitive damages).

## II.

Defendant next disputes the amount of economic damages awarded by the jury. Primarily, he contends that, because plaintiff was earning more money at the time of trial than at the time of his injury, any award for lost earning capacity was purely speculative. He also argues that there was insufficient evidence of plaintiff's future medical expenses. We disagree.

■ A trial court may instruct the jury on any loss of earnings or impairment of earning capacity if such an instruction is appropriate in light of the evidence in the case. *See Martinez v. Shapland,* 833 P.2d 837

(Colo.App.1992). The test is what the capacity would have been if not impaired by the injury proximately caused by the defendant. *See Moyer v. Merrick,* 155 Colo. 73, 392 P.2d 653 (1964).

If there is evidence of permanent injury, a plaintiff need not show that he could have earned more money if he had not been injured. *See Zertuche v. Montgomery Ward & Co.,* 706 P.2d 424 (Colo.App.1985). And, if there is permanent injury, evidence that a plaintiff is earning more money after the injury does not preclude an award of diminished earning capacity. *See Kitto v. Gilbert,* 39 Colo.App. 374, 570 P.2d 544 (1977).

The amount of damages to be awarded is within the sole province of the jury and may not be disturbed unless it is completely unsupported by the record. *Dupont v. Preston,* 9 P.3d 1193 (Colo.App.2000).

Here, there was sufficient evidence to support an award for lost earning capacity. Specifically, several experts testified that, as a result of the accident, plaintiff suffered a permanent impairment that prevented him from engaging in physical activities such as cement finishing, which had been his profession for most of his life before the accident. Furthermore, defendant would need medical care for the rest of his life, and his ability to lift, walk, and spend time at work was permanently impaired.

We also disagree with defendant's suggestion that the evidence of plaintiff's future medical care was too speculative to warrant consideration by the jury. There was testimony that plaintiff's torn disc was a result of the accident and would require a surgical procedure costing between $5000 and $7000, which would need to be repeated every twelve to eighteen months. *See Ce-Buzz, Inc. v. Sniderman,* 171 Colo. 246, 466 P.2d 457 (1970)(medical evidence of continuous pain, post-accident surgery, and numerous hospital and doctor visits sufficient to allow jury to consider damages for future medical expenses).

Defendant argues that applying a different measure of future damages in personal injury cases, such as the "rule of certainty" applicable in contract cases, *see, e.g., Tull v. Gundersons, Inc.,* 709 P.2d 940 (Colo. 1985), would avoid the jury's speculation in calculating diminished earning capacity or future medical care. In a similar vein, he also argues that the trial court should have submitted a verdict form that distinguished between these types of economic losses. However, we will not address these issues because they were not properly raised in the trial court. *See* C.R.C.P. 51; *Estate of Stevenson v. Hollywood Bar & Cafe, Inc.,* 832 P.2d 718 (Colo.1992).

We decline plaintiff's request to award sanctions for a frivolous appeal. *See* C.A.R. 38(d); *Wood Bros. Homes, Inc. v. Howard,* 862 P.2d 925 (Colo.1993).

The judgment is affirmed.

METZGER and ROY, JJ., concur.